**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHAD WEILER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 14 C 4991** |
| | ) | |
| **VILLAGE OF OAK LAWN** | ) | |
| **and LARRY DEETJEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Chad Weiler has sued the Village of Oak Lawn and Village Manager Larry

Deetjen, challenging their decision to eliminate the Village's Department of Business

Operations, of which Weiler was the sole employee. Weiler alleges that Deetjen

recommended the elimination of the department because Weiler had publicly accused

Deetjen of race discrimination and had supported an opposing party's candidates in the

April 9, 2013 municipal election. Defendants have moved to dismiss Weiler's complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the

Court grants defendants' motion in part and denies it in part.

### Background

For purposes of the motion to dismiss, the Court accepts as true the following

facts alleged in Chad Weiler's complaint. *See Fortres Grand Corp. v. Warner Bros.*

*Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Weiler was employed by the Village of

Oak Lawn as Director of Business Operations from July 25, 2005 until August 13, 2013.

Am. Compl. ¶ 7.  He was the sole employee in the Department of Business Operations.

As director, Weiler assisted with economic development, maintenance of village

grounds, and special events.  He also identified potential sites for new businesses in the

Village.  *Id.* ¶ 8.  Weiler reported to Larry Deetjen, the Village Manager, who is

"responsible for the overall administration of all Village departments."  *Id.* ¶ 10.

This lawsuit stems from the elimination of the Department of Business

Operations (including the director position) through an ordinance passed by the Village

of Oak Lawn's Board of Trustees.  Weiler contends that Deetjen proposed the

elimination of the department to the Board because Weiler had publicly accused

Deetjen of race discrimination and had supported an opposing party's candidates in the

municipal election.

Weiler's race discrimination allegations relate to the controversy surrounding

where JenCare, a company that provides medical services to senior citizens, would

build a facility in Oak Lawn.  In early 2013, JenCare began negotiations to lease a

building in the Village's downtown business area, which formerly housed a House of

Brides store (the "House of Brides site").  *Id.* ¶ 11.  Deetjen opposed that location and

instead suggested that JenCare lease a building outside the downtown area that had

previously been a Men's Wearhouse store (the "Men's Wearhouse site").  *Id.* ¶¶ 14–15.

JenCare preferred the House of Brides site and asked if Deetjen would support a

parking variance for that site.  Deetjen refused to support JenCare in its request for

approval in downtown Oak Loan.  *Id.* ¶¶ 16–19.

JenCare petitioned the Village's Planning and Development Commission for

parking variances for both sites.  At an April 2013 meeting of the Commission, Deetjen

"expressed 'deep concerns' regarding JenCare's use of the House of Brides Site." *Id.*

¶ 23. He stated that "the 57% parking variance was 'significant,' and also raised

concerns regarding the building's exterior and existing sign." *Id.* He also suggested

that the JenCare facility would not comply with the Village's plan for the development of

the downtown area. The Board denied JenCare's petition for a parking variance at the

House of Brides site but eventually granted the company's petition for a variance at the

Men's Wearhouse site. *Id.* ¶¶ 40–45, 51.

Deetjen told Weiler privately that he did not want JenCare in the former House of

Brides location because he did not want that "type of clientele" in the downtown

business area; instead, he thought JenCare should build its facility on the "outskirts of

town." *Id.* ¶ 52. Because Weiler believed a significant segment of JenCare's patients

would be African American and Hispanic, he understood Deetjen's comments to mean

that he did not want African Americans and Hispanics in downtown Oak Lawn. Weiler

also inferred that Deetjen's comments were racially motivated because Deetjen had

made a racist comment to an African-American police officer at a previous job. *Id.*

¶¶ 53–54. Weiler reported Deetjen's comments to Dave Heilmann, the Village's mayor

at the time. *Id.* ¶ 60. Concerned about a potential lawsuit against the Village, Heilmann

investigated the complaint and notified JenCare's Senior Vice President that JenCare

may have been the victim of race discrimination. *Id.* ¶¶ 66–68.

In addition to alleging that his department was eliminated because he exposed

race discrimination, Weiler also contends that his position was eliminated in retaliation

for his public support of Heilmann, the incumbent mayor, and Melissa Moran, who ran

for Village clerk, in the April 9, 2013 municipal election. Shortly after the election, which

both Heilmann and Moran lost, Deetjen asked to meet with Weiler regarding his job "now that the election was over." *Id.* ¶ 33. At the meeting, Deetjen said that Weiler was "in a pickle" and that he should have put signs in his yard supporting the incumbent clerk rather than Moran. *Id.* ¶ 34. In early July 2013, Deetjen proposed an agreement under which Weiler would retire on July 25, the date his pension would vest. *Id.* ¶ 88. Weiler believed that Deetjen was threatening to fire him if he did not retire. *Id.* ¶ 91. Weiler did not agree to retire, and the offer was rescinded.

Having failed to force Weiler's retirement, Deetjen submitted a memorandum to the Village Board of Trustees in advance of its August 13, 2013 meeting in which he suggested that eliminating the Department of Business Operations "would save 'on an annual basis $102,000 gross in salaries and benefits but most likely $50,000 net after the Village Manager's office redistributes work assignments and/or utilizes some contracted services.'" *Id.* ¶ 96. At the meeting, the Board voted to pass an ordinance eliminating Weiler's department. Weiler was placed on administrative leave the next day, and the department was eliminated on September 1, 2013. *Id.* ¶¶ 98–100.

Weiler has brought a number of claims against Deetjen in his individual capacity and the Village of Oak Lawn. He claims that defendants are liable under 42 U.S.C. § 1983, because they retaliated against him for exercising his First Amendment rights (counts 1 and 2), terminated him because of his political speech and association in violation of the First Amendment (counts 3 and 4), terminated him because he opposed race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment (counts 5 and 6), and retaliated against him for complaining about the violation of JenCare's contract-related rights in violation of 42 U.S.C. § 1981 (counts 7

4

and 8).  Weiler also brings a number state law claims.  He claims that the Village violated the Illinois Civil Rights Act, 740 ILCS 23/5 (count 9), and the Illinois Human Rights Act, 775 ILCS 5/6-101(A) (count 11), by terminating him because he opposed race discrimination.[1]  He also claims that both defendants violated the Illinois Whistleblower Act, 740 ILCS 174/15, by retaliating against him for disclosing information about illegal conduct to a government agency (count 10).

## Discussion

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiff's allegations as true and draws reasonable inferences in his favor.  *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).  In order to state a viable claim, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    Legislative immunity

Defendants contend that Deetjen is entitled to absolute legislative immunity with respect to the federal claims, because his proposal to eliminate the Department of Business Operations constituted a legislative act.  Weiler argues that the ordinance was actually a termination, which is administrative rather than legislative.

Absolute immunity is an affirmative defense.  *Tully v. Barada*, 599 F.3d 591, 594

---

[1] Weiler had not alleged an Illinois Human Rights Act violation when defendants filed their motion to dismiss.  Weiler amended his complaint to include that count after briefing on the motion to dismiss had been completed.

(7th Cir. 2010). Although a plaintiff generally need not rebut affirmative defenses in his complaint, dismissal is appropriate if a "litigant [ ] pleads [himself] out of court by alleging (and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). The Court therefore must determine whether Weiler has alleged facts that would entitle Deetjen to immunity.

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). To determine whether an official engaged in a legislative activity, a court must engage in a functional inquiry to assess whether his actions were "integral steps in the legislative process." *Id.* at 55; *see also Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988).

Weiler argues that Deetjen is not immune from liability because he did not vote on the ordinance eliminating Weiler's position. But an official need not be a legislator to be entitled to legislative immunity. The Supreme Court has concluded that "introducing, voting for, and signing an ordinance eliminating the government office held by respondent constituted legislative activities." *Bogan*, 523 U.S. at 46. Courts have applied this rationale to grant immunity to local officials who proposed or drafted ordinances, even if they did not vote on the legislation. *See, e.g.*, *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003) (county executive who transmitted budget eliminating a security supervisor's position, which was enacted by the County Board, was entitled to legislative immunity); *Bryant v. Jones*, 575 F.3d 1281, 1305–07 (11th Cir. 2009) (executive assistant who developed and drafted the budget proposal eliminating plaintiff's position, which was later adopted by the Board of Commissioners, was entitled to legislative immunity). Thus, Deetjen can benefit from absolute immunity

even if he did not vote on the ordinance.

Although courts must assess whether an official's actions were "in form, quintessentially legislative," it is not clear whether courts may also assess the "whether the ordinance was legislative in *substance*." *Bogan*, 523 U.S. at 55. In *Bogan*, the Supreme Court considered whether the elimination of a city employee's department (of which she was the only employee) by a vote of the city council entitled the officials who prepared and voted on the ordinance to immunity. *Id.* at 47–48. The Court deferred deciding "whether the formally legislative character of petitioners' actions is alone sufficient to entitle petitioners to legislative immunity," because there the ordinance "in substance, bore all the hallmarks of traditional legislation." *Id.* at 55–56 (concluding that the ordinance "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents" and "involved the termination of a position, which . . . may have prospective implications that reach well beyond the particular occupant of the office").

Weiler urges the Court to analyze whether Deetjen's proposal was substantively legislative, even if it was legislative in form. The Seventh Circuit's guidance concerning whether an official is categorically entitled to immunity when he introduces or votes on legislation has not been entirely consistent. The court in *Benedix v. Vill. of Hanover Park*, 677 F.3d 317 (7th Cir. 2012), articulated what appears to be a rule that an official is immune from suit if his action was formally legislative:

> Despite Benedix's protest that this ordinance wasn't 'really' legislation because it had her as a target, we agree with the district court that an ordinance adopted through the legislative process, and having the force of law, is covered by legislative immunity no matter the motives of those who proposed, voted for, or otherwise supported the proposal.

*Id.* at 318. If *Benedix* created a categorical rule, then Deetjen is entitled to immunity without further analysis. It is not disputed that Weiler's position was eliminated through the passage of an ordinance proposed by Deetjen. Because proposing legislation is formally legislative, Deetjen's memorandum constituted a legislative act. *See Bogan*, 523 U.S. at 55; *Bagley v. Blagojevich*, 646 F.3d 378, 392 (7th Cir. 2011); *Nisenbaum*, 333 F.3d at 808.

In *Bagley*, however, the Seventh Circuit suggested that even if a position was terminated through a formally legislative act, a court might look past the legislative form to determine if the legislation was a targeted attack on an individual rather than a prospective reorganization. In that case, the court held that Governor Blagojevich's veto eliminating certain Illinois Department of Corrections captains' positions was legislative in form. *Bagley*, 646 F.3d at 393. Although, according to the court, this could have ended the inquiry, the panel went on to consider "whether the action substantively 'bore all the hallmarks of traditional legislation.'" *Id.* (quoting *Bogan*, 523 U.S. at 56).

The court cited substantial precedent that "supports the distinction between the firing of an employee," which is administrative, "and the elimination of a position," which is legislative. *Id.*; *see also Bogan*, 523 U.S. at 56 (noting that the ordinance "involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office"); *Rateree*, 852 F.2d at 950 (distinguishing between employment decisions and budget decisions that "have an effect on employment by either creating or eliminating positions or by raising or lowering salaries").

Although the court determined that Governor Blagojevich's veto was

substantively legislative, it suggested that the outcome might have differed if the positions had not been eliminated for policy or budgetary reasons. When the former captains argued that a nearly identical position was created after their positions were eliminated, the court responded that "this was not a one-for-one replacement of disfavored employees with more favored individuals to do the same work. Some responsibilities overlapped and some former captains performed duties similar to the shift commanders, but not to a degree that the reorganization was not prospective." *Bagley*, 646 F.3d at 395. The court distinguished *Bagley* from two cases in which officials were not entitled to legislative immunity, even though they had eliminated positions through a legislative act. *Id.* at 395–96. In both cases, the positions were not actually prospectively eliminated, and the officials made personalized assessments of individual employees. *See Canary v. Osborn*, 211 F.3d 324, 330–31 (6th Cir. 2000) (school board members terminated assistant principal after he publicly commented on a suspected cheating scheme involving student achievement tests); *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8–10 (1st Cir. 2000) (mayor eliminated positions held by members of the opposing political party). Unlike those cases, Governor Blagojevich's actions were substantively legislative because he did not replace "an individual with other individuals with the same title or duties" or target particular individuals for termination. *Bagley*, 646 F.3d at 395–96.

In sum, *Bagley* suggests a narrow window that would allow examination of whether a personnel action, though it was in form a legislative action, was actually a firing of a particular individual. The Court must therefore assess whether Weiler has alleged sufficient facts that would permit a determination that his position was not

prospectively eliminated. Weiler has not sufficiently made the necessary allegation.

Weiler argues that this was not a prospective reorganization, because Deetjen hired Steve Radice to do the same job for the same salary. But the facts alleged in the complaint do not support Weiler's contention that the elimination of the Department of Business Operations was not a prospective reorganization. The complaint makes it clear that Radice was not a "one-for-one replacement." *Bagley*, 646 F.3d at 395. Radice was initially hired as a part-time employee, and he now receives a yearly salary of $75,000 for providing consulting services as a contract employee. Deetjen contemplated in the memorandum proposing the elimination of the department that the Village would save "on an annual basis . . . most likely $50,000 net after the Village Manager's office redistributes work assignments and/or utilizes some contracted services." Am. Compl. ¶ 96. Thus, Deetjen anticipated that the use of contract employees would save the Village money. The minutes from the Village Board meeting also confirm that Deetjen presented the ordinance as a budgetary measure.[2] The elimination of an entire department and its replacement with a contract consultant represents a structural reorganization with prospective implications.

Even if Weiler's allegations suggest an improper motive, the Court cannot examine Deetjen's motives. *Bogan*, 523 U.S. at 55; *Bagley*, 646 F.3d at 394–98; *Rateree*, 852 F.2d at 951; *Bryant*, 575 F.3d at 1307. Because the complaint makes it clear that the elimination of the department was a reorganization of the Village's

---

[2] Defendants attached the ordinance and the August 13, 2013 meeting minutes to their motion to dismiss. The Court can take judicial notice of such documents without converting a motion to dismiss into a motion for summary judgment if they are public records. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011). Weiler does not dispute that the minutes and ordinance are public records. The Court finds that these documents are public records that can be considered on a motion to dismiss.

employment structure that had "prospective [budgetary] implications," Deetjen is entitled to absolute immunity regardless of his motives. *Canary*, 211 F.3d at 331.

Accordingly, the Court dismisses the federal claims against Deetjen in his individual capacity (counts 1, 3, 5, and 7). Because the Court has ruled that Deetjen is entitled to absolute immunity, the Court need not address his alternative argument that he is entitled to qualified immunity.[3]

## B.    State law immunity

Defendants contend that Weiler's state law claims are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act.[4] Specifically, they argue that two provisions of the Tort Immunity Act preclude liability against Deetjen and that the Village is therefore also immune under provisions immunizing public entities for injuries resulting from the acts of employees who are not liable. 745 ILCS 10/2-109, 10/2-103. Deetjen and the Village have not established that they are entitled to dismissal of the state law claims on immunity grounds.

The Court looks to state immunity rules to determine whether a defendant is immune from liability under state law. *See Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991) ("Under the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law."); *Fields v. Wharrie*, 740 F.3d 1107, 1115 (7th Cir. 2014). State law immunity, like federal

---

[3] The Village is not entitled to absolute or qualified immunity. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 701 (1978).

[4] Defendants only argue that Weiler's Illinois Civil Rights Act and Whistleblower Act claims are barred on immunity grounds, because Weiler had not amended the complaint to add an Illinois Human Rights Act claim when briefing on the motion to dismiss was completed.

immunity, is an affirmative defense. *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 370, 799 N.E.2d 273, 280 (2003). The burden is on the government to establish that the Tort Immunity Act bars liability, and the Act is "strictly construed against the public entities involved." *Id.* at 380, 799 N.E.2d at 286.

Deetjen argues that he is immune under a passage of the Act that provides: "A public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law." 745 ILCS 10/2-205. He argues that no Village employee can be liable for actions related to the enactment of the budget that eliminated Weiler's position. The Board members who voted on the ordinance would be immune from state liability under this provision and as a result the Village is immune from liability for their actions. *Id.*; 745 ILCS 10/2-103 ("A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."). Thus, Weiler's state law claims against the Village are barred to the extent that they contemplate liability based on the Board members' votes. It is undisputed, however, that Deetjen did not adopt any enactment as required by the Act. Because Deetjen merely proposed the ordinance, section 2-205 does not apply to him under its plain terms, and the Village is not immune from liability for his actions.

The Tort Immunity Act also entitles officials to immunity for discretionary policy decisions: "A public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Illinois courts have determined that this provision, when analyzed in conjunction with immunity for government entities under 745 ILCS 10/2-109, also

immunizes municipalities for officials' discretionary policy decisions. *Murray v. Chi. Youth Ctr.*, 224 Ill. 2d 213, 229, 864 N.E.2d 176, 186 (2007) ("[S]ection [2–201], together with section 2–109 (745 ILCS 10/2–109 (West 1992) ('a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable')), provides both public employees and the public employer with immunity against allegations that challenge discretionary policy determinations.").[5]

In order for an official to be entitled to immunity under section 2-201, the action that caused the injury must "be both a determination of policy and an exercise of discretion." *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 197 Ill. 2d 466, 472, 758 N.E.2d 848, 852 (2001). "[D]iscretionary acts are those which are unique to a particular public office," as compared to ministerial acts, which "a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Id.* at 472, 758 N.E.2d at 852 (internal quotation marks and citation omitted). Policy decisions are "those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Id.*

If what Weiler alleges is true, Deetjen's proposal to eliminate Weiler's department was discretionary, because he was not performing a set of tasks in a prescribed

---

[5] The Seventh Circuit has observed that there is some debate in Illinois courts as to whether a municipality can "combine sections 2–201 and 2–109 to extend immunity from a municipal official to the municipality itself." *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 679 n.4 (7th Cir. 2009) (citing *Smith v. Waukegan Park Dist.*, 231 Ill. 2d 111, 116–17, 896 N.E.2d 232, 236–37 (2008)). The Court need not address this question at this stage. Because Deetjen is not immunized under any section of the Tort Immunity Act, the Village cannot be immunized under section 2–109.

manner.  *See Johnson v. Mers*, 279 Ill. App. 3d 372, 380, 664 N.E.2d 668, 675 (1996) ("In the case at bar, plaintiffs allege liability based on the ILPD's hiring of a police officer. Such an action is inherently discretionary and is not performed on a given state of facts in a prescribed manner.").

Nonetheless, there is a factual dispute concerning whether Deetjen was determining policy when he recommended the elimination of Weiler's department. Accepting Weiler's allegations as true, Deetjen was not balancing competing interests; rather, he proposed the reorganization to retaliate against Weiler for his complaints about Deetjen's discriminatory comments and his support of the opposing party's candidates.  The Seventh Circuit held that a mayor who fired an employee after she exposed corrupt practices in the mayor's office was not immune from retaliatory discharge under the Tort Immunity Act, because the mayor failed to establish that he had made a policy decision.  *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 679 (7th Cir. 2009).  Reversing the district court's grant of summary judgment, the court stated that the mayor's "one-time decision to fire one employee [ ] does not amount to a 'judgment call between competing interests.'  In fact, we are at a loss to identify any competing interests at all."  *Id.* (quoting *Van Meter*, 207 Ill. 2d at 379, 799 N.E.2d at 285) ("Owen either made a one-time decision to fire Valentino because she copied the sign-in sheets or because she spoke out against the Village's practice of ghost payrolling, or some combination thereof.").

Weiler's allegations are similar to those in *Valentino*.  He alleges that Deetjen's proposal to eliminate his position was not driven by policy considerations, but by retaliatory motives.  Because there is a dispute concerning whether Deetjen made a

policy decision in eliminating Weiler's department, the Court declines to dismiss the state law claims against Deetjen on immunity grounds. *See Van Meter*, 207 Ill. 2d at 380, 799 N.E.2d at 286 (refusing to dismiss on state immunity grounds, because "[q]uestions of material fact remain as to whether the conduct of the municipal defendants in the matter at bar was the result of a 'policy decision' and 'discretionary'"). Because Deetjen is not entitled to immunity at this stage, the state law claims against the Village related to his actions may not be dismissed under 745 ILCS 10/2-109.

For purposes of case management, the Court will address Weiler's argument that Deetjen is not immune because section 2–201 carves out an exception that precludes immunity when liability is "otherwise provided by statute." 745 ILCS 10/2-201. According to Weiler, the Illinois Whistleblower Act is one such statute. This argument is unavailing. The Tort Immunity Act specifically lists the statutes that constitute exceptions, and the Whistleblower Act is not one of them. 745 ILCS 10/2-101. Illinois courts have been reticent to infer exceptions that are not expressly stated in the Tort Immunity Act. *See, e.g.*, *People ex rel. Birkett v. City of Chicago*, 325 Ill. App. 3d 196, 201, 758 N.E.2d 25, 29 (2001). For instance, in refusing to recognize an exception for corrupt or malicious motives, the Illinois Supreme Court stated: "It is well settled that '[w]here an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express.'" *Vill. of Bloomingdale v. CDG Enters., Inc.*, 196 Ill. 2d 484, 493, 752 N.E.2d 1090, 1098 (2001) (quoting *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990)). Based on the plain language of the Tort Immunity Act, the Whistleblower Act does not preclude immunity. *See Thompson v. Bd.*

*of Educ. of Chi.*, No. 11 C 1712, 2014 WL 1322958, at *7 n.7 (N.D. Ill. Apr. 2, 2014) ("Though it seems anomalous that public employees would have immunity from actions taken against whistleblowers, that is the result dictated by the plain language of the Tort Immunity and Whistleblower Acts."); *Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 878 (N.D. Ill. 2001) (Kennelly, J.) ("The Tort Immunity Act provides that it does not affect the liability of public employees or entities under a number of listed statutes.  The Whistleblower Act, however, is not one of those statutes.").  The Court is aware of no authority suggesting otherwise.

### C.     First Amendment political affiliation claim

Defendants argue that Weiler's political affiliation claims (counts 3 and 4) should be dismissed because his political affiliation was a permissible criterion for his removal.  Because Deetjen is entitled to absolute immunity, the Court only addresses the First Amendment affiliation claim against the Village.

Weiler alleges that the Village violated the First Amendment by terminating his position in retaliation for his public support of the former mayor and one of the candidates for Village clerk.  The termination or removal of a public employee because of his political affiliation is typically prohibited under the First Amendment.  *Elrod v. Burns*, 427 U.S. 347, 359–60 (1976).  Nonetheless, "party affiliation may be an acceptable requirement for some types of government employment."  *Branti v. Finkel*, 445 U.S. 507, 517 (1980).  Specifically, "politics is an appropriate ground of decision for policymaking *and* confidential positions."  *Benedix*, 677 F.3d at 320; *see also Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005) (political affiliation may be a valid job qualification "either because the job involves the making of policy and thus the exercise

of political judgment or the provision of political advice to the elected superior, or because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts").

It is not clear from the complaint whether Weiler's position involved policymaking, as that inquiry turns on "the job description and the powers of office." *Riley*, 425 F.3d at 361. The complaint does not contain information about Weiler's official job description; thus, the Court cannot dismiss the association claim on the ground that Weiler held a policymaking position. *See Walsh v. Heilmann*, 472 F.3d 504, 504 (7th Cir. 2006).

Nonetheless, Weiler's position involved a confidential relationship with Deetjen. In *Benedix*, the Seventh Circuit affirmed the dismissal of an association claim because the plaintiff's job as executive coordinator to a village manager involved a confidential relationship. *Benedix*, 677 F.3d at 320. The court defined "'confidential' positions to include those in the policymaker's immediate office—not only those who hear confidences (such as the policymaker's secretary or executive assistant) but also the persons responsible for recommending and implementing the policies." *Id.* According to the court, "[a]n Executive Coordinator who reports directly to, and works closely with, a policymaker such as the Village Manager is properly classified as a 'confidential' employee who may be hired and fired on account of politics—or friendship." *Id.*

Accepting the facts alleged in the complaint as true, there is no question that Weiler's relationship with Deetjen was a confidential one. As Village Manager, Deetjen was "responsible for the overall administration of all Village departments," including Weiler's department. Am. Compl. ¶ 10. Weiler "worked under Deetjen's direction" and "reported to Deetjen." *Id.* ¶¶ 8, 10. Among other responsibilities, Weiler "scout[ed]

potential sites for businesses interested in doing business in the Village," which he did "pursuant to Deetjen's direction." *Id.* ¶¶ 8, 56. Thus, Weiler was responsible for "recommending and implementing [ ] policies" under Deetjen's direction. *Benedix*, 677 F.3d at 320.

Weiler and Deetjen's relationship also involved meetings about Village policy. They met a number of times to discuss where the JenCare facility would be located and whether its requests for a parking variance should be approved. Am. Compl. ¶¶ 52, 58. According to Weiler's complaint, intimate details of municipal governance were discussed at these and other meetings. Deetjen shared his vision for the Village's downtown and his concerns about JenCare. Deetjen also met with Weiler to discuss an FBI investigation of the Village, although the complaint does not describe the subject matter of the investigation. *Id.* ¶ 61. Based on the facts alleged in the complaint, Deetjen and Weiler's relationship was a confidential one, for which political affiliation was an appropriate job qualification. Accordingly, the Court dismisses Weiler's First Amendment association claim.

**D.      Equal protection claim**

Defendants contend that Weiler's equal protection claims against Deetjen and the Village (counts 5 and 6) must be dismissed because Weiler does not have standing. Again, the Court only addresses the claim against the Village.

Defendants are correct that Weiler does not have standing to challenge the violation of JenCare's equal protection rights. A person cannot assert the rights of another unless "the party asserting the right has a close relationship with the person who possesses the right" and "there is a hindrance to the possessor's ability to protect

his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (internal quotation marks omitted) (describing the prudential limitations on standing).  There is no allegation that Weiler had a close relationship with JenCare or its employees or that JenCare could not have protected its own interests.  Thus, Weiler does not have standing to sue on JenCare's behalf.

Weiler clarified, in his response brief, that he "does not seek to sue on behalf of JenCare or its patients to vindicate their rights; rather, he seeks to vindicate his own rights, which were violated when defendants terminated his employment because he objected to and opposed racial discrimination against JenCare and its customers."  Pl.'s Opp'n to Mot. to Dismiss at 11.  Weiler's equal protection claim is therefore a claim of retaliation for reporting race discrimination.  This claim cannot be pursued under the Equal Protection Clause.  The Seventh Circuit has held that "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *see also Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989).  Weiler concedes that *Boyd* precludes his equal protection claim but argues that *Boyd* is no longer good law in light of the Supreme Court's decision in *CBOCS W., Inc. v. Humphries*, 553 U.S. 442 (2008), holding that 42 U.S.C. § 1981, which prohibits race discrimination in the making and enforcement of contracts, encompasses retaliation claims.  *Id*. at 457.  The Court in *Humphries* did not mention the Equal Protection Clause, however.  The *Humphries* Court reached its conclusion by comparing 42 U.S.C. § 1981 to 42 U.S.C. § 1982, which serves a similar purpose and has been similarly construed; it concluded that retaliation claims may be brought under section 1981 because section 1982 has been

held to encompass retaliation claims. *Id.* at 451–52 (citing *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 176 (2005)). The analysis in *Humphries* thus turned on principles of statutory interpretation. Nothing in the decision suggests that the Court's reasoning applies to claims brought under the Equal Protection Clause.

If anything, Supreme Court precedent supports the conclusion that the Equal Protection Clause cannot support Weiler's retaliation claim. Because Weiler has not alleged differential treatment based on membership in any group, his claim can only proceed under a "class-of-one" theory of equal protection (the Court notes, however, that Weiler has not argued the claim on this basis). *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Supreme Court has held that a public employee cannot state a claim under a "class-of-one" theory by alleging that she was arbitrarily treated differently from similar employees, unless she asserts that the treatment was based on membership in a protected class. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594 (2008). There, the Court stated that "the class-of-one theory of equal protection has no application in the public employment context." *Engquist*, 553 U.S. at 607. Because Weiler has not alleged membership in a class and a public employee cannot raise an equal protection claim under any "class-of-one" theory, let alone a "class-of-one" theory involving retaliation, Weiler's equal protection claim must be dismissed. *See Lynch v. City of Chicago*, No. 12 C 9032, 2014 WL 7004967, at *2–3 (N.D. Ill. Dec. 11, 2014).

**E.    Illinois Civil Rights Act claim**

Defendants argue that Weiler's claim against the Village under the Illinois Civil Rights Act (ICRA) must be dismissed because he has lacks standing, he has not exhausted his state remedies, and the claim is duplicative of his First Amendment

retaliation claim.

ICRA provides, in relevant part, that no unit of local government shall "exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender." 740 ILCS 23/5(a). The statute does not expressly create a cause of action for retaliation. Judge Hoffman of the Illinois Appellate Court stated, in a concurring opinion, that "[t]he Civil Rights Act, unlike the Human Rights Act, does not grant a right of action to a person who experiences retaliation because he or she has opposed that which he or she reasonably believes to be unlawful discrimination." *Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 368 Ill. App. 3d 321, 329–30, 856 N.E.2d 460, 469 (2006) (Hoffman, J., concurring). No other court has addressed the issue. After reviewing the relevant case law and legislative history, the Court respectfully disagrees with Judge Hoffman.

ICRA was patterned on Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which prohibits race and national origin discrimination in federally assisted programs. *See* 93d Ill. Gen. Assemb., H. Deb., April 3, 2003, at 146 (statements of Rep. Fritchey) ("[T]his Bill will create a parallel state remedy to . . . the federal cases that were brought under Section 601 of the Civil Rights Act."); *Ill. Native Am. Bar Ass'n*, 368 Ill. App. 3d at 327, 856 N.E.2d at 467 (stating that "statements of a bill's sponsor matter when determining legislative intent" and reviewing Representative Fritchey's comments about ICRA). Accordingly, Illinois courts "look to cases concerning alleged violations of federal civil rights statutes to guide our interpretation of the Act." *Cent. Austin Neighborhood Ass'n v. City of Chicago*, 2013 IL App (1st) 123041, ¶ 10; *see also*

*Dunnet Bay Constr. Co. v. Hannig*, No. 10-3051, 2014 WL 552213, at *24 (C.D. Ill. Feb. 12, 2014) (analyzing Title VI and ICRA together).

The Fourth Circuit has held that Title VI encompasses retaliation claims. *Peters v. Jenney*, 327 F.3d 307, 318–19 (4th Cir. 2003). In 2005, the Supreme Court bolstered this interpretation by holding that Title IX, which was patterned after Title VI, "encompasses suits for retaliation, because retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005). Every court to consider the question since *Jackson* has concluded that Title VI encompasses a claim for retaliation, because Title IX and Title VI are interpreted in parallel. *See, e.g., Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 n.8 (11th Cir. 2013); *Sawyer v. Columbia Coll.*, 864 F. Supp. 2d 709, 722 (N.D. Ill. 2012); *Cabrera-Diaz v. Penn Kidder Campus Jim Thorpe Sch. Dist.*, No. CIV.A. 3:08-2192, 2010 WL 5818289, at *10 (M.D. Pa. Aug. 9, 2010), *report and recommendation adopted*, 2011 WL 613383 (M.D. Pa. Feb. 11, 2011); *Hickey v. Myers*, No. 09-CV-01307, 2010 WL 786459, at *4 (N.D.N.Y. Mar. 2, 2010); *Silva v. St. Anne Catholic Sch.*, 595 F. Supp. 2d 1171, 1187 (D. Kan. 2009); *Rubio v. Turner Unified Sch. Dist. No. 202*, 523 F. Supp. 2d 1242, 1253 (D. Kan. 2007); *Gutierrez v. State of Wash., Dep't of Soc. & Health Servs.*, No. CV-04-3004-RHW, 2005 WL 2346956, at *5 (E.D. Wash. Sept. 26, 2005). The Court is persuaded by the analysis of these courts. Thus, because a plaintiff can maintain an action for retaliation under Title VI, and ICRA was patterned on Title VI, the Court concludes that an individual can bring a claim for retaliation under ICRA.

Weiler has standing to pursue a retaliation claim under ICRA. He has alleged an

injury caused by the Village—the elimination of his position due to his complaints about race discrimination—that would be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Weiler therefore has standing to sue for retaliation pursuant to ICRA.

Defendants also argue that Weiler's ICRA claim is duplicative of his First Amendment retaliation claim.  Defendants are correct that duplicative state law claims have been dismissed when they involve the "same operative facts."  *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 273–74, 653 N.E.2d 915, 921 (1995); *see also Beringer v. Standard Parking O'HARE Joint Venture*, No. 07C5027, 2008 WL 4890501, at *5 (N.D. Ill. Nov. 12, 2008).  Because Weiler's claims have distinct elements, however, there is no basis to dismiss the ICRA claim as duplicative.  Among other things, Weiler would have to show that his speech was protected under the First Amendment to prevail on his retaliation claim and that he engaged in protected activity to prevail on his ICRA claim.  *Compare Valentino*, 575 F.3d at 670 (listing the elements of a First Amendment retaliation claim), *with Peters*, 327 F.3d at 320 (listing the elements of a Title VI retaliation claim).  Neither party has presented any arguments concerning whether the facts in this case give rise to a claim for relief under the First Amendment or ICRA.  Accordingly, the Court will not dismiss the ICRA claim as duplicative.  *Cf. Beringer*, 2008 WL 4890501, at *4.

Finally, defendants' exhaustion argument lacks merit.  ICRA does not require exhaustion; rather, a plaintiff may file a lawsuit directly in federal court.  740 ILCS 23/5(b) ("Any party aggrieved by conduct that violates subsection (a) may bring a civil lawsuit, in a federal district court or State circuit court, against the offending unit of

government.").[6]  Thus, the Court denies defendants' motion to dismiss Weiler's ICRA claim.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss in part and denies it in part [dkt. no. 14].  The Court dismisses the federal claims against Deetjen in his individual capacity (counts 1, 3, 5, and 7), along with the First Amendment association and equal protection claims against the Village (counts 4 and 6).  The Court declines to dismiss Weiler's state law claims (counts 9 and 10), and the Village has not sought dismissal of counts 2, 8, and 11.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  March 31, 2014

---

[6] The Illinois Human Rights Act, by contrast, does require exhaustion of remedies.  *See* 775 ILCS 5/7A-101–104.  After defendants filed their motion to dismiss, Weiler exhausted his remedies and amended the complaint to include a claim under the Illinois Human Rights Act.